633 A.2d 1111

**William M. FIORE, t/d/b/a Fiore Trucking and Contracting Company, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, BOARD OF FINANCE AND REVENUE, Appellee.**

Supreme Court of Pennsylvania.

Argued April 7, 1993.

Decided Nov. 5, 1993.

Reargument Denied Dec. 9, 1993.

---

512

Henry G. Beamer, Pittsburgh, for Wm. Fiore.

Clinton G. Smith, Jr., Harrisburg, for Bd. of F. & R.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal by the taxpayer, William Fiore, t/d/b/a Fiore Trucking and Contracting Company (Fiore), from tax assessments for the years 1976 through 1981 entered by the Commonwealth Board of Finance and Revenue and affirmed by the Commonwealth Court. Fiore raises several challenges to the sales and use tax assessments amounting to more than $1,000,000 plus interest and penalties, attacking both procedural and substantive determinations made in these proceedings. Our exhaustive review of this voluminous record discloses that the tax assessments were, on this record, improperly determined, and we therefore vacate the order of the Commonwealth Court.

The facts underlying this controversy may be summarized as follows. The taxpayer, Fiore, is a proprietorship licensed by the Department of Revenue for sales and use tax collection and remittance. Fiore purchased liquid fuel, depreciable equipment, parts, tires, repairs, mobile homes, an airplane and other property, and also leased certain trucks, all of which provide the basis for sales and use tax assessments.

William Fiore also owned and operated other proprietorships operated under various trade names including Mill Industrial Service Company, Diamond Fuel, Diamond Excavating and Hauling, and Rolling Hills Village; William Fiore also was the sole shareholder and operator of Bill's Trucking, Inc. These various entities had overlapping business activities and records, and the intermingling of their business activities appears to be responsible in large part for the difficulties in auditing the taxpayer and assessing the taxes owed by Fiore Trucking and Contracting Company.

The taxpayer was audited by the Department of Revenue for the period January 1, 1975, through September 30, 1978, resulting in an assessment for a deficiency of $216,741.26 plus

interest of $35,038.99 and a penalty of $52,609.86, or a total of $304,390.11. Fiore's appeal to the Board of Finance and Revenue resulted in abatement of the penalty but affirmance of the deficiency and interest. The deficiency of $251,780.25 was appealed to the Commonwealth Court at docket number 925 C.D. 1980.

During the pendency of the appeal of the first assessment, the department again audited Fiore, this time examining the period October, 1978 through December, 1981. The department assessed a deficiency of $831,207.28 plus interest of $226,626.01 and a penalty of $207,801.87, or a total of $1,265,-635.16. The appellate boards of the department reduced the assessment to $770,495.79 plus appropriate interest and penalties. This second deficiency assessment was appealed to the Commonwealth Court at docket number 895 C.D. 1985.

The second audit resulted in an additional assessment for a fuel use tax deficiency in the amount of $81,728.57 plus interest of $24,963.68 and a penalty of $8,172.86, or a total of $114,865.62. This was affirmed in all respects by the Board of Finance and Revenue, and was appealed to the Commonwealth Court at docket number 1029 C.D. 1985.

The three appeals were consolidated in the Commonwealth Court, which affirmed the three contested orders of the Board of Finance and Revenue. *Fiore v. Commonwealth*, 141 Pa. Cmwlth. 578, 596 A.2d 1147 (1991), *aff'd on exceptions, Fiore v. Commonwealth*, 148 Pa.Cmwlth. 62, 609 A.2d 862 (1992) (en banc).

■ Appellant raises a variety of issues, procedural, constitutional, and evidentiary, of which we find only one to have merit. Fiore claims that he was denied procedural due process when the Commonwealth was permitted to change its basis for the tax assessments at the eleventh hour, but Fiore was not given equal procedural flexibility. The taxing authority's original position was that the taxpayer was not entitled to a public utility exclusion because he predominantly served one customer. It maintained this position throughout the first ten years of this proceeding, and prevailed before the Board of

Appeals of the Department of Revenue and again before the Board of Finance and Revenue. At a later stage of the proceedings, during the appeal to the Commonwealth Court, it was determined that such a rule was erroneous, so the Commonwealth argued instead that Fiore should be denied the exclusion because of his poor record keeping and because he was not certified as a common carrier. During the ten years following the first audit, there had never been any contention that Fiore was not a common carrier, was guilty of poor record keeping, or lacked a license or certification. When the Commonwealth Court determined that a common carrier may haul predominantly for one customer, the Commonwealth was permitted to adopt the latter arguments—after discovery had ended and a mere twenty days before the evidentiary hearing in the Commonwealth Court.

Fiore argues that the proceedings constituted a denial of procedural due process. We agree. The taxing authority long labored under an erroneous conception that a common carrier could not properly serve predominantly one customer. It was successful in advocating this erroneous legal standard before the revenue boards and Fiore was compelled, throughout the proceedings, to counter this now conceded misapplication of the law. Fiore finally prevailed before the Commonwealth Court, only to be met by a barrage of new legal theories which would subject him to liability for the assessments. Fiore's de novo hearing before the Commonwealth Court, he claims, was held before he had time to prepare to address the new legal theories advanced by the Commonwealth.

The Commonwealth argues in response that Fiore had a full and fair opportunity to establish entitlement to exemption, citing the comprehensive proceedings and appeals before the Board of Appeals of the Department of Revenue and the Board of Finance and Revenue. Only after the taxpayer appealed to the Commonwealth Court, however, did the Commonwealth appear as an adversarial interested party. The Commonwealth relied for its prima facie case upon the findings and exhibits contained in the "Field Audit Report and

Basis for Assessment." In the hearing held before the Commonwealth Court, the court properly limited the presentation of evidence to the assessed transactions which were litigated in the finance boards below. The Commonwealth claims that the taxpayer received a full and fair opportunity to prove "those facts necessary for relief on those issues properly raised and preserved." According to the Commonwealth, Fiore failed to meet his burden of proof with regard to the application of the claimed public utility exclusion to the assessed items of equipment.

The Commonwealth's response misses the point of the taxpayer's argument. The thrust of Fiore's grievance is that limiting his proof in the Commonwealth Court hearing to "those facts necessary for relief on those issues properly raised and preserved" was unjust since the issues litigated before the Board of Appeals of the Department of Revenue and the Board of Finance and Revenue were different from those raised by the Commonwealth in the final hearing. We agree that this constitutes a denial of procedural due process.

■ This court has stated in another context that due process "requires at a minimum that the deprivation of life, liberty or property by adjudication must be preceded by notice and opportunity for hearing *appropriate to the nature of the case.*" *In re Upset Sale, Tax Claim Bureau of Berks County,* 505 Pa. 327, 333, 479 A.2d 940, 943 (1984) (emphasis added). Although this case does not deal with lack of actual notice or the total absence of a hearing, we note that due process requires an *appropriate* hearing. In *Conestoga National Bank v. Patterson,* 442 Pa. 289, 275 A.2d 6 (1971), this court analyzed the minimum requirements of due process, a difficult undertaking. We stated:

There is no general definition of procedural due process applicable to every situation, and courts have deliberately refrained from formulating one. As one court has noted: "Procedural Due Process, as this court understands it, is not susceptible of advance definition. In the administrative field the desiderata are notice and opportunity to be heard. . . ."

. . . .

" 'Due process of law', while incapable of exact definition, generally means 'law in the regular course of administration through courts of justice, according to those rules and forms which have been established for the protection of human rights.' Its essential elements are 'notice and opportunity to be heard and to defend *in an orderly proceeding adapted to the nature of the case* before a tribunal having jurisdiction of the cause'. . . ."

442 Pa. at 294–95, 275 A.2d at 8–9 (citations omitted; emphasis added). Again we note that procedural due process requires more than notice and hearing, but protects as well the right to an *orderly proceeding adapted to the nature of the case.* The opportunity to be heard means little unless it occurs in an orderly, regular proceeding appropriate to the nature of the case. It is the orderliness and appropriateness of the hearing before the Commonwealth Court that are in question here, and we deem the procedural due process rights of Fiore to have been infringed.

Fiore is in no way relieved of his duty to comply with all statutory and regulatory strictures incumbent upon commercial taxpayers, upon common carriers or public utilities, or upon taxpayers claiming exemptions. For example, section 271(a) of the Tax Reform Code of 1971 provides:

Every person liable for any tax imposed by this article, or for the collection thereof, shall keep the records, render such statements, make the returns and comply with such rules and regulations as the department may, from time to time, prescribe regarding matters pertinent to his business. . . .

72 P.S. § 7271(a). The department's regulations further provide:

Every person who sells or uses personal property or services shall be required to keep the following basic records:

(1) For purposes of accountability for use tax, taxpayers shall be required to retain all purchase invoices, requisi-

tions, documents, and other records relating to their acquisition of tangible personal property and services. The purchaser shall maintain records showing that the tax was paid where the purchaser had paid the tax to his vendor, and where the purchaser has not paid tax to his vendor but has paid use tax directly to the Commonwealth. Where the purchaser has not paid tax in the above cited instances, he shall create and maintain records showing the reason he considered the purchase as nontaxable, and information concerning the nature, use, price and dates of purchases and use of the property, from which it can be ascertained by the Department, with reasonable facility, whether or not use tax is due thereon and, if due, the amount of tax.

61 Pa.Code § 34.2(a)(1). Fiore is fully subject to these requirements. Nevertheless, he was haled into court to account for six years of sales and use tax records, and was given only twenty days notice to justify his exemption despite ten prior years of litigation in which the salient issue was whether his business predominantly served one customer. Due process requires that notice of hearing be reasonable in terms of opportunity to prepare to answer the issues raised by the Commonwealth for the first time at a late stage of the litigation.

Accordingly, on the facts of this case, we must vacate the order of tax deficiency and remand the case to the Commonwealth Court for a new hearing at which Fiore will be given the opportunity to prove his entitlement to exemption from the sales and use tax, after receiving sufficient notice to search his records and prepare documentation of his claimed entitlement.

Order vacated and case remanded for further proceedings in accordance with this opinion.

LARSEN, J., did not participate in the consideration or decision of this case.

CAPPY, J., concurs in the result.

PAPADAKOS, J., files a dissenting opinion.

PAPADAKOS, Justice, dissenting.

I dissent and would affirm on the basis of the Commonwealth Court's well reasoned opinion and order.